Electronically FILED by Superior Court of California, County of Los Angeles on 07/22/2021 03:37 PM Sherri R. Carter, Executive Officer/Clerk of Court, by D. Williams,Deputy Clerk
21STCV27024

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Edward Moreton

1  | **LAW OFFICE OF J. BLACKNELL**
2  | **JOVAN BLACKNELL (SBN 237162)**
   | **KELLEN DAVIS (SBN 326672)**
3  | 200 Corporate Pointe, Suite 495
   | Culver City, CA 90230
4  | T.: 310.469.9117; F.: 310.388.3765

5  | Attorney for Plaintiff,
6  | **MARIA ARIAS**

7

8  **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9  **COUNTY OF LOS ANGELES**

10  MARIA ARIAS, individually and as Successor ) 21STCV27024
11  in Interest to THE ESTATE OF JESUS ) **COMPLAINT FOR DAMAGES**
    GUERRA-ARIAS, )
12                                           ) (1) Negligence
                                             ) (2) Negligence Res Ipsa Loquitur
13           **Plaintiff,**                  ) (3) Negligence Per Sé
        vs.                                  ) (4) Negligent Training
14                                           ) (5) Violation of Civil Rights (42
15  COUNTY OF LOS ANGELES; DEPUTY J.         )     U.S.C. §1983)(*5th and 14th*
    RODRIGUEZ, individually and in his/her   )     *Amendments – Failure to Protect*)
16  official capacity; DEPUTY EDWARD CASAS,  ) (6) Violation of Civil Rights (42
    individually and in his official capacity; )   U.S.C. §1983)(*Interference with*
17  DEPUTY VALENCE, individually and in his  )     *Familial Relations*)
    official capacity; DOES 1 through 100, inclusive, ) (7) Intentional Infliction of Emotional
18                                           )     Distress
19           **Defendants.**                 ) (8) False Imprisonment
                                             )
20                                           )     **DEMAND FOR JURY TRIAL**
                                             )
21                                           )

22

23

24  _____

25

26  Plaintiff MARIA ARIAS, individually and as successor in interest to THE ESTATE OF JESUS

27  GUERRA-ARIAS, alleges on information and belief as follows:

28

COMPLAINT FOR DAMAGES

1

## PARTIES

1. At all relevant times mentioned in this Complaint, Plaintiff MARIA ARIAS (hereinafter also "Ms. Arias" or "PLAINTIFF") was a resident of Los Angeles County, California. Ms. Arias is the legal successor in interest to decedent JESUS GUERRA-ARIAS.

2. At all relevant times mentioned in this Complaint, decedent JESUS GUERRA-ARIAS (hereinafter also "Mr. Guerra-Arias" or "Decedent") was a resident of Los Angeles County, California.

3. DEFENDANT LOS ANGELES COUNTY (hereinafter, "COUNTY") was at all times relevant herein, and is, a public entity duly organized and existing under and by virtue of the laws of the State of California. COUNTY is responsible for the care and custody of inmates incarcerated in COUNTY jail facilities and lockup areas at courthouses for the Superior Court of California for the County of Los Angeles. DEFENDANT COUNTY is responsible for the funding, staffing, and direction of Los Angeles Sheriff's Department (hereinafter also "LASD"); for the hiring, retention, training, and supervision of LASD employees; and for the observation of rights of LASD employees and persons subject to LASD jurisdiction.

4. At all times applicable herein, DEPUTY J. RODRIGUEZ (I.d. No. 621413) (hereinafter "DEFENDANT DEPUTY RODRIGUEZ" or "RODRIGUEZ") was an individual residing, on information and belief, in the County of Los Angeles.

5. At all times applicable herein, DEPUTY EDWARD CASAS (I.d. No. 614013) (hereinafter "DEFENDANT DEPUTY CASAS" or "CASAS") was an individual residing, on information and belief, in the County of Los Angeles.

COMPLAINT FOR DAMAGES

6.  At all times applicable herein, DEPUTY J. VALENCE (I.d. No. 627687) (hereinafter "DEFENDANT DEPUTY VALENCE" or "VALENCE") was an individual residing, on information and belief, in the County of Los Angeles.

7.  Hereinafter, all individual Defendants, including those presently named as DOE defendants, shall be collectively referred to as "LASD DEFENDANTS."

8.  PLAINTIFF is ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues them by such fictitious names. PLAINTIFF will amend this Complaint to show the true names and capacities of said DOE Defendants when the same are ascertained. PLAINTIFF is informed and believes, and thereon alleges, that each of the fictitiously named Defendants was in some manner liable and legally responsible, in that their conduct caused the damages and injuries set forth herein.

9.  PLAINTIFF is informed and believes and, based upon such information and belief, alleges that each of the above-named parties was and is an agent, employee, principal, or employer of each of the remaining defendants and vice/versa. In addition, PLAINTIFF is informed and believes and on such basis alleges that the defendants named hereinabove, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above-named defendants conspired with, and/or aided and/or abetted each of the remaining defendants in committing the acts herein alleged.

## JURISDICTION AND VENUE

10. This court has jurisdiction over this matter because all events at issue occurred in Los Angeles County and DEFENDANT COUNTY is a public entity existing and situated in Los Angeles County that operates exclusively in Los Angeles County.

COMPLAINT FOR DAMAGES

11. This court has personal jurisdiction over all DEFENDANTS because COUNTY is a government entity existing in and by virtue of the laws of the state of California and the County of Los Angeles, and the remaining DEFENDANTS are agents or employees of COUNTY and, on information and belief, all reside in Los Angeles County. All of DEFENDANTS' official activities take place in Los Angeles County.

12. This court has supplemental jurisdiction over Plaintiff's claims that arise under the laws, treaties, and Constitution of the United States because those claims arise from the same occurrence that gave rise to the causes of action that form the primary causes of action alleged here.

13. On December 8, 2020, PLAINTIFFS filed a notice of government claim with the Los Angeles County Board of Supervisors pursuant to the California Tort Claims Act. *Cal. Gov. Code section 910-945.6.*

14. On January 27, 2021, PLAINTIFFS government claim was rejected by operation of law as a result of DEFENDANT COUNTY's failure to respond to the claim within 45 days of its receipt.

## COMMON ALLEGATIONS

15. PLAINTIFF was arrested by officers with the Los Angeles Police Department ("LAPD") based on allegations that Plaintiff was driving under the influence of alcohol on July 8, 2020. PLAINTIFF was transported to Metropolitan Detention Center in Los Angeles where he underwent the intake process and was then housed.

16. On July 10, 2021, PLAINTIFF was transferred to the custody of LASD for his court appearance at the Metropolitan Courthouse, located at 1945 S. Hill Street, Los Angeles, California, 90007 ("Metro Courthouse").

COMPLAINT FOR DAMAGES

17. On information and belief, DEFENDANT COUNTY took custody of Mr. Guerra-Arias at or around 11:00 a.m. on July 10, 2020.

18. Agents, employees, and/or representatives of DEFENDANT COUNTY exercise exclusive dominion and control over all Los Angeles County jail facilities and "lockups" in courthouses of the Superior Court of the County of Los Angeles.

19. Agents, employees, and/or representatives of DEFENDANT COUNTY, exclusively, control access to each area, part, module, section, cell, room, office, pod, and/or tier in lockup at Metro Courthouse.

20. During the Covid-19 pandemic, as a public entity, DEFENDANT COUNTY was required by state and federal mandates to provide protective face coverings to incarcerated inmates in its custody. It has been DEFENDANT COUNTY's practice to provide face coverings that are made of the same strong, denim-like fabric that is consistent with the fabric used for inmate outer clothing, commonly known as "jumpsuits."

21. Representatives of DEFENDANT COUNTY gave Mr. Guerra-Arias a face covering made of the above-described strong fabric that was so absurdly large that it in no way could wrap around a human face in a manner that could serve any safety function.

22. The "facemask" was a readily usable as a weapon that an inmate could use to harm himself, custody staff, or other inmates.

23. Mr. Guerra-Arias was escorted by COUNTY representatives to the court lockup area adjacent to Department 73 of the Metro Courthouse at, on information and belief, a time between 2:00 and 2:23 p.m. on July 10, 2020. For purposes of this pleading, the term

COMPLAINT FOR DAMAGES

"Time Period" shall encompass the time of approximately 2:00 and 3:00 p.m. on July 10, 2020.

24. In the court lockup area, Mr. Guerra-Arias was placed in a cell alone. Once he was inside, COUNTY representatives closed and locked the iron door that blocks any view in or out of the cell except for a window approximately one foot long and one foot wide located in center of door beginning five feet from the floor. The cell was concrete with a metal plank forming an area to sit or lay, a sink, and a toilet. In the corner, there was an immovable iron L-shaped fixture with the cylindrical upper portion pointing directly upward, protruding from the wall about three feet from the ground.

25. There were no "rolls" of bathroom tissue in the cell, nor are inmates permitted to possess the center "roll" made of cardboard or another similar material in Los Angeles County jails or court lockups. Bathroom tissue is issued to inmates without the "roll."

26. On information and belief, at the time in question, a document or other obstruction about the same size as the single window was taped or otherwise affixed to the outside of the iron door such that it completely blocked any view into the cell while Mr. Guerra-Arias was inside.

27. On information and belief, for all or some of the Time Period, DEFENDANT DEPUTY RODRIGUEZ was the only representative of DEFENDANT COUNTY that was present in the lockup of adjacent to Department 73 at the Metropolitan Courthouse. On information and belief, although DEPUTY DEFENDANT RODRIGUEZ was present in the area, she was on her lunch break and not on duty during that period.

28. The cell in which the Decedent was housed was equipped with an operating camera that streamed footage in real time to monitors placed at the desk and/or station where

DEFENDANT DEPUTY RODRIGUEZ and any other deputies posted in that portion of the jail.

29. On information and belief, DEFENDANT DEPUTY CASAS was also present for portions of the Time Period.

30. At or about 3:00 p.m. DEFENDANT DEPUTY CASAS attempted to contact Mr. Guerra-Arias because he was ordered by the court to obtain Mr. Guerra-Arias' phone number and address. DEFENDANT DEPUTY CASAS was ordered contact the Decedent because County knew that the Decedent's primary language was Spanish, and Deputy Casas was a Spanish-speaking Deputy on duty at the courthouse.

31. On information and belief, at or before 3:00 p.m. on July 10, 2020, the court in Department 73 ordered that Mr. Guerra-Arias be released from COUNTY custody on his own recognizance. After the court made this order, DEFENDANT DEPUTY CASAS was dispatched to gather the aforementioned information from Mr. Guerra-Arias.

32. From the time that Mr. Guerra-Arias was placed in the cell, no representative of DEFENDANT COUNTY saw or attempted to contact Mr. Guerra-Arias until DEFENDANT DEPUTY CASAS was ordered to do so based on what was happening in court.

33. Mr. Guerra-Arias was found unresponsive in a holding cell of the courthouse at or around 3:00 p.m. on that day. Mr. Guerra-Arias was reportedly found hanging from the metal pole suspended above the ground near the toilet of the holding cell: the huge "facemask" had been wrapped around his neck with the strong fabric of the mask's loops that would fasten to one's ear instead hooked around the metal pole, holding up his body. Mr. Guerra-Arias had vomited on the ground and was completely unresponsive with no pulse.

COMPLAINT FOR DAMAGES

34. After several minutes of being completely unresponsive, emergency medical staff was able to revive Mr. Guerra-Arias to the extent that his heart again began to pump blood. Otherwise, he remained in an unconscious, vegetative state and was transferred from Metro Courthouse to Good Samaritan Hospital in Los Angeles ("Good Samaritan").

35. At Good Samaritan, medical staff stabilized Mr. Guerra-Arias before he was transported to LA-USC Medical Center ("LAUSC") for further treatment. There, he was diagnosed with a number of injuries, with the most germane being a "likely terminal anoxic brain injury." He was referred for emergency neurological treatment. Despite doctors' efforts, Mr. Guerra-Arias continued to have no meaningful brain activity.

36. MARIA ARIAS was notified of her son's condition on or about July 11, 2020 when LAUSC medical professionals were approaching the conclusion that Mr. Guerra-Arias was effectively brain-dead.

37. MARIA ARIAS rushed to LAUSC to be by her son's side, only to learn that she could not see him due to a LASD deputy being stationed in Mr. Guerra-Arias' room at all times and therefore filling the single-guest capacity that was hospital protocol due to the Covid-19 pandemic.

38. On July 12, 2020, Mr. Guerra-Arias was transferred by ambulance to Rancho Los Amigos Facility for what amounted to palliative care.

39. Mr. Guerra-Arias died on July 12, 2021, as a result of his injuries that he suffered while in DEFENDANT COUNTY's custody.

COMPLAINT FOR DAMAGES

## FIRST CAUSE OF ACTION – NEGLIGENCE

### By MARIA ARIAS and THE ESTATE OF JESUS GUERRA-ARIAS

### Against ALL DEFENDANTS

40. MARIA ARIAS and THE ESTATE OF JESUS GUERRA-ARIAS, by and through his successor in interest, realleges, and incorporates herein as if set forth in full, paragraphs 1 through 39, above.

41. When COUNTY took custody of Mr. Guerra-Arias, it created a special relationship requiring DEFENDANTS to warn and protect him from all known and foreseeable harm. *Girardo v. California Dept. of Corrections and Rehabilitation, 168 Cal.App. 4th 231, 251 (2008).*

42. As sworn peace officers, DEPUTY DEFENDANTS had a duty of reasonable care in the discharge of their duties.

43. DEFENDANTS duties required that they not provide Mr. Guerra-Arias with a strong piece of fabric large with which he could readily hang himself.

44. DEFENDANTS' duties required that they exercise care sufficient to prevent the Decedent from being placed in a cell with a strong piece of fabric that he could hang himself with where there was a metal fixture situated high enough for the Decedent to hang himself.

45. Performing Title 15 "safety checks" is a required task that is done within the routine course and scope of Deputy Sheriffs' employment as peace officers working in Los Angeles County jails and court lockup areas. Performing reasonable safety checks is not an act the performance of which is subject to the discretion of COUNTY employees, but is a duty mandated by California law.

46. By providing Mr. Guerra-Arias with a safety mask that was objectively useless as a face covering but could readily be fitted around one's neck, then placing him in cell that had a protruding metal pole where the large mask could readily be fastened, DEFENDANTS breached their duty to Mr. Guerra Arias.

47. By failing to conduct "safety checks" involving direct visual observation of Mr. Guerra-Arias at intervals no longer than that provided by law, DEFENDANTS breached their duty to him.

48. DEFENDANTS' breach of duty is the proximate cause of the Decedent's injuries, up to and including his death, because it was foreseeable that an incarcerated inmate would be hanged by his neck when provided with a large piece of strong fabric with loops on either end and placed in a cell with a pole on which the person could hook the loops around and hang themselves.

49. DEFENDANTS' breach of duty is the actual cause of the Decedent's injuries, up to and including his death, because but for DEFENDANTS providing him with a large piece of cloth that was useless as a face covering and placing him in a cell then failing to check on him, there is no way that he could have suffered these injuries.

50. At minimum, DEFENDANTS' conduct was a substantial factor in causing Decedent's injuries as alleged herein.

51. As a result of the aforementioned conduct of DEFENDANTS, PLAINTIFFS have sustained damages in an amount subject to proof at trial.

52. Plaintiffs are informed and believes that DEFENDANTS and DOES 1 through 100, inclusive, acted knowingly and willfully, with reckless disregard for the substantial risk of severe harm Plaintiff. Therefore, Plaintiff is entitled to an award of punitive damages

COMPLAINT FOR DAMAGES

against the individual defendants, not any public entity, in order to punish those

defendants and to deter them and others from such conduct in the future.

### SECOND CAUSE OF ACTION – NEGLIGENCE RES IPSA LOQUITUR

### By THE ESTATE OF JESUS GUERRA-ARIAS and MARIA ARIAS

### Against ALL DEFENDANTS

53. THE ESTATE OF JESUS GUERRA-ARIAS, by and through his successor in interest, and MARIA ARIAS, reallege, and incorporate herein as if set forth in full, paragraphs 1 through 52, above.

54. Jesus Guerra-Arias was in good physical health when he was accepted into the custody of DEFENDANT COUNTY on July 10, 2020. "Good physical health" is here intended to mean that he did not suffer any of the injuries as described herein prior to being in the Sheriff's custody.

55. DEFENDANT COUNTY has exclusive dominion and control over all areas in Los Angeles County jail facilities and Los Angeles Superior Court courthouse lockups, including all individuals in custody within those facilities.

56. By approximately 3:00 p.m. on July 10, 2020, Mr. Guerra-Arias was unresponsive, not breathing, had suffered injuries including but not limited to massive trauma to his throat and neck and, as a result of asphyxiation, loss of nearly all of his brain function.

57. Because Mr. Guerra-Arias was too injured to explain what happened to him and COUNTY representatives purport to not have seen his injuries take place, the conduct of DEFENDANTS is presumed negligent because:

   a. Mr. Guerra-Arias was in the custody of DEFENDANT COUNTY and thus subject to the complete dominion and control of COUNTY and its agents;

COMPLAINT FOR DAMAGES

b. COUNTY provided Mr. Guerra-Arias with the drastically oversized "facemask";

c. COUNTY representatives were the only persons that had contact with Mr. Guerra-Arias between the time that he was last seen healthy and the time that he was documented as nearly dead;

d. A reasonable peace officer charged with overseeing the care and custody of incarcerated inmates would ensure that no inmate was housed in a cell with a fixture and tool with which to hang himself;

e. A reasonable peace officer charged with overseeing the care and custody of incarcerated inmates would conduct "safety checks" at intervals sufficiently close enough to reasonably ensure that the inmate could not harm himself or others in the time between "safety checks."

58. DEFENDANTS breached their duties of care when said act or omission directly and proximately caused Jesus Guerra-Arias to sustain grievous injuries as described herein, including death.

### THIRD CLAIM – NEGLIGENCE PER SE

### By THE ESTATE OF JESUS GUERRA-ARIAS and MARIA ARIAS

### Against ALL DEFENDANTS:

59. THE ESTATE OF JESUS GUERRA-ARIAS, by and through his successor in interest, realleges, and incorporates herein as if set forth in full, paragraphs 1 through 58, above.

60. At all times relevant herein, the conduct of DEFENDANTS, as a public entity responsible for the care and custody of incarcerated individuals and as employees of that public entity, was governed by the provisions of Title 15 of the California Code of Regulations ("Title 15" and "CCR"), including but not limited to:

COMPLAINT FOR DAMAGES

a.  DEFENDANTS were responsible for the safe custody of Mr. Guerra-Arias at all times that he was in COUNTY custody. (*15 CCR §3271; §1010(b)*)

b.  DEFENDANT COUNTY was responsible for ensuring the proper training of employees assigned to supervise inmates in COUNTY custody, specifically including suicide prevention training to employees working in court holding and temporary holding facilities (*15 CCR §1020 et. al.; §1010(b)*)

c.  DEFENDANTS were responsible for conducting safety checks of Mr. Guerra-Arias no less than every 30 minutes while he was housed in a single-man cell in the court lockup area at Metro Courthouse (*15 CCR §1027.5, §1010(b); LASD Custody Division Manual 4-11/030.00*);

d.  DEFENDANTS were responsible for ensuring that at least one COUNTY employee with the requisite training was on duty and available to respond at all times that Mr. Guerra-Arias was in the court lockup area at Metro Courthouse;

61. Title 15 of the CCR was enacted with the purpose of providing uniform requirements for the administration of California jail and prison facilities in order to ensure the security of facilities and safety of inmates and staff.

62. Mr. Guerra Arias was, at all times relevant herein, a person that was intended to be protected by the provisions of Title 15 because he was an inmate in the custody of a California public entity whose conduct is governed by Title 15.

63. Because self-harm and suicide prevention are expressly listed purposes of Title 15, the harm suffered by Plaintiffs falls well-within the scope of the harm that is intended to be prevented by Title 15 mandates.

COMPLAINT FOR DAMAGES

64. DEFENDANTS violated the mandates of Title 15 by failing to prevent him from being placed in a cell with a large piece of cloth from which he could hang himself from a fixture in the cell.

65. DEFENDANTS violated the mandates of Title 15 by failing to conduct safety checks through direct visual observation of Mr. Guerra-Arias after he was placed in the cell until the time that he was documented as unresponsive.

66. Because DEFENDANT DEPUTY RODRIGUEZ was the only COUNTY employee that may have been present at the time that the Decedent sustained his injuries but was on lunch break, DEFENDANTS violated the mandates of Title 15 because no trained employees were on duty throughout the time that the Decedent was housed in the cell in court lockup.

67. As a direct and proximate result of DEFENDANTS violations of its requirements under Title 15, Mr. Guerra-Arias suffered foreseeable harm of grievous bodily injury and death.

68. DEFENDANTS' conduct caused and exacerbated Plaintiffs' injuries because even a minimal observation of DEFENDANTS' duties would have mitigated the harm suffered by Plaintiff and caused his injuries to be treatable rather than fatal.

69. Through the aforementioned failures, DEFENDANTS acted with deliberate indifference to the foreseeable risk that Plaintiff could suffer grievous injury up to, and including, death, as a result of being given contraband that was easily converted into a noose and placed in a cell where the noose could easily be used for a deadly purpose.

COMPLAINT FOR DAMAGES

14

### FOURTH CLAIM – NEGLIGENT TRAINING

### By THE ESTATE OF JESUS GUERRA-ARIAS and MARIA ARIAS

### Against ALL DEFENDANTS:

70. THE ESTATE OF JESUS GUERRA-ARIAS, by and through his successor in interest, reincorporates, and realleges as if set forth fully herein, paragraphs 1 through 69, above.

71. COUNTY had a duty to adequately train all agents, representatives, and employees that interact with persons incarcerated in Los Angeles County jails including court lockups.

72. Because inmates are stripped of their ordinary ability to care for themselves, COUNTY had a special relationship with Mr. Guerra-Arias that created an affirmative duty to protect him from all known and foreseeable harm.

73. It was foreseeable that Mr. Guerra-Arias would be harmed because COUNTY knew that he was in possession of a large piece of cloth that could easily be wrapped around one's neck. COUNTY further knew that the cell in which Mr. Guerra-Arias had a protruding metal fixture from which one could easily fix the hooks of the large piece of cloth around in order to hang oneself.

74. A reasonable party charged with administering Los Angeles County jails and protecting inmates from known and foreseeable harm would know that agents, employees, and representatives working in the jail are likely to experience inmates trying to harm themselves, particularly in court lockups where they may receive adverse news and be more inclined to self-harm.

75. At all times relevant herein, COUNTY had a duty to adequately train its agents, employees, and representatives in effective monitoring of persons in its custody including but not limited to suicide prevention training.

76. On information and belief, COUNTY breached its duty to sufficiently train its agents, employees, and representatives with respect to interaction with, and the observation of rights of, inmates through manifestations of negligent and inadequate training, including but not limited to the following:

   a.  Giving Mr. Guerra-Arias a "facemask" that could serve no protective function but could readily be used to choke or harm himself or another inmate;

   b.  Giving Mr. Guerra-Arias a "facemask" that could readily be fashioned into a noose;

   c.  Placing Mr. Guerra-Arias, while he had said "facemask," in a cell where there was a protruding metal pole from which he could readily affix the "facemask" to harm himself;

   d.  Failing to directly visually observe Mr. Guerra-Arias, especially while he was placed in said cell with said "facemask";

   e.  Failing to have any trained staff or agent on duty while Mr. Guerra-Arias was in the court lockup;

77. COUNTY's failure to sufficiently train its agents, employees, or representatives was the proximate cause of Lewis' death, suffering, and the indignities that he endured just before his death because it was foreseeable that an inmate would be placed at risk of grievous harm, up to and including death, when his safety and well-being depend on inadequately trained individuals.

78. COUNTY's failure to sufficiently train its agents, employees, or representatives was the direct cause of Mr. Guerra-Arias' death, suffering, and the indignities that he endured just before his death because but for DEFENDANTS' employees' inadequate training, Lewis

COMPLAINT FOR DAMAGES

would not have been given materials with which he could harm himself; would not have

been placed in a single-man cell with an apparatus hang himself; would not have

remained unsupervised in said cell until he was found near-dead suffering from

permanent brain injuries.

79. As a result of COUNTY's breach of its duty of care, PLAINTIFF is entitled to recover

damages for Mr. Guerra-Arias' suffering and death in an amount according to proof.

### FIFTH CLAIM – FAILURE TO PROTECT FROM HARM (Violation of 14th

### Amendment to United States Constitution)(42 U.S.C. §1983)

### By THE ESTATE OF JESUS GUERRA-ARIAS

### Against ALL DEFENDANTS:

80. THE ESTATE OF JESUS GUERRA-ARIAS, by and through his successor in interest,

reincorporates, and realleges as if set forth fully herein, paragraphs 1 through 79, above.

81. By the actions and omissions described herein by DEFENDANTS, each of whom acted

under color of law in their individual capacities, deprived Mr. Guerra-Arias of the right,

secured by the Fourteenth Amendment to the United State Constitution, to have his safety

and life protected while in the custody of DEFENDANT COUNTY by subjecting him to

conditions that reflect a deliberate indifference to the deprivation of these rights. *Farmer*

*v. Brennan, 511 U.S. 825, 833 (1994); Deshaney v. Winnebago Cty. Dept. of Soc. Srvcs.,*

*489 U.S. 189, 199-200 (1989); Girardo v. California Dept. of Corrections and*

*Rehabilitation, 168 Cal.App. 4th 231, 251 (2008).*

82. DEFENDANTS knew or should have known that the conditions of Mr. Guerra-Arias'

housing posed a substantial risk of serious harm and/or death because he was given an

COMPLAINT FOR DAMAGES

item that could not have been used as a facemask and could only be used for a harmful purpose then placed in a cell where he was not supervised.

83. Well before accepting custody of the Decedent, DEFENDANTS were responsible for conducting proper safety checks, supervising persons in custody, and preventing persons in custody from harming themselves or others.

84. While Mr. Guerra-Arias was in the cell in Department 73's lockup, DEFENDANTS knew that he was in possession of an item that could not be used as a protective face mask and that posed a direct risk to Mr. Guerra-Arias' safety.

85. The failures of DEFENDANTS to intervene, prevent, or otherwise ensure the safety and welfare of Jesus Guerra-Arias, when DEFENDANTS were in a position to do so, renders said DEFENDANTS liable for these violations that resulted in Mr. Guerra-Arias' death.

86. DEFENDANTS subjected Mr. Guerra-Arias to their wrongful conduct which deprived him of substantial rights as described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Mr. Guerra-Arias or others would be violated by their acts and/or omissions.

87. The conduct of DEFENDANTS was so brazen, and all DEFENDANTS were so familiar and comfortable with the actions that, on information and belief, the wrongful acts were undertaken pursuant to an established custom of DEFENDANT LOS ANGELES COUNTY, under which COUNTY representatives knowingly fail to adhere to legal mandates requiring them to protect inmates, including but not limited to the wide distribution of cloth "facemasks" that are useless as actual safety mask to be worn on one's face; failing to conduct safety checks within the legally mandated time frames; failing to report such failures; and colluding to create false reports and narratives in order

COMPLAINT FOR DAMAGES

to shield themselves, COUNTY, and its other representatives from liability for such failures. COUNTY representatives with knowledge of these failures to protect inmates adhere to silence and refuse to intervene or report the unlawful activity. Officers, support staff, supervisors, and legislating authorities within COUNTY know of specific instances of this conduct and are aware of complaints and grievances stemming from this conduct, yet despite such knowledge, intentionally fail to take action to prevent or remedy the perpetration and consequences of this custom.

88. Mr. Guerra-Arias' injuries, damages, and eventual death, as described herein, were the proximate result of DEFENDANTS' wrongful acts and/or omissions that are a pervasive component of the above-described custom or practice within DEFENDANT COUNTY. As such, DEFENDANTS are liable for damages in an amount subject to proof.

**SIXTH CAUSE OF ACTION – INTERFERENCE WITH FAMILIAL ASSOCIATION**

**(Violation of the Fourteenth Amendment to the United States Constitution)(42 U.S.C.**

**§1983**

**By Plaintiff MARIA ARIAS**

**Against ALL DEFENDANTS:**

89. PLAINTIFF MARIA ARIAS realleges, and incorporates herein as if set forth in full, paragraphs 1 through 88, above.

90. The Fourteenth Amendment to the United States Constition protects the right of all persons to be free from unlawful state interference with their familial relations. 42 U.S.C. §1983 provides a private right of action for conduct that violates this right.

91. As a result of the unlawful and unconstitutional conduct, policies, and practices of DEFENDANTS as described herein, Jesus Guerra-Arias suffered violations of his rights

COMPLAINT FOR DAMAGES

leading to his death, and Maria Arias lost her son. Clearly, this outcome has caused a significant and meaningful infringement on Maria Arias' ability to maintain a bond with her son as protected by the Fourteenth Amendment. Indeed, DEFENDANTS' conduct has permanently and irreparably damaged the relationship between this mother and her son, thus violating Plaintiff Maria Arias' rights to familial integrity and association and her right to be free from government interference into her relationship with her son.

92. Through the acts and omissions described herein, DEFENDANTS acted maliciously and/or acted with wanton or reckless disregard for the rights of Mr. Guerra-Arias, Maria Arias, and any other similarly situated individual.

93. The conduct of DEFENDANTS was so brazen, and all DEFENDANTS were so familiar and comfortable with the actions that, on information and belief, the wrongful acts were undertaken pursuant to an established custom of DEFENDANT LOS ANGELES COUNTY, under which COUNTY representatives knowingly undertake actions that they know is likely to interfere with familial relations, including but not limited to demonstrating disregard for the medical needs of inmates; keeping individuals that have been lawfully released in custody for extended periods of time; employing excessive force against persons in COUNTY custody; punishing individuals without due process of law including the use of corporal punishment up to and including deadly force; and colluding to create false reports and narratives in order to shield themselves, COUNTY, and its other representatives from liability for such conduct. COUNTY representatives with knowledge of these failures to protect inmates adhere to silence and refuse to intervene or report the unlawful activity. Officers, support staff, supervisors, and legislating authorities within COUNTY know of specific instances of this conduct and

COMPLAINT FOR DAMAGES

are aware of complaints and grievances stemming from this conduct, yet despite such
knowledge, intentionally fail to take action to prevent or remedy the perpetration and
consequences of this custom.

94. DEFENDANTS and DOES 1 through 100, inclusive, participated in, conspired with,
approved of and/or aided and abetted the conduct of remaining DEFENDANTS.

**SEVENTH CLAIM– INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**By THE ESTATE OF JESUS GUERRA ARIAS and PLAINTIFF MARIA ARIAS**

**Against ALL DEFENDANTS:**

95. MARIA ARIAS, and THE ESTATE OF JESUS GUERRA-ARIAS, by and through his
successor in interest, hereby repeats, re-alleges and incorporates the allegations contained
in paragraphs 1 through 94, above, as if fully set forth herein.

96. In addition to engaging in the acts described herein that caused the death of Mr. Guerra
Arias, DEFENDANTS engaged in conduct that was extreme and outrageous, well
beyond the scope of conduct that is acceptable in a civil society, in service to their
interest in limiting their culpability for the harms that Mr. Guerra-Arias suffered. On
information and belief, on July 10, 2020, the court ordered that Mr. Guerra-Arias be
released on his own recognizance with respect to the criminal charge against him and
ordered that he be released forthwith. Despite knowledge of this order, DEENDANTS
abused its authority and public trust by knowingly and intentionally causing Mr. Guerra-
Arias to not be processed for release until July 14, 2020, two days after his death.

97. Because of this intentional conduct in service to DEFENDANTS unlawful objectives, a
Sheriff's deputy was stationed at Mr. Guerra-Arias' bedside every moment of his last two

COMPLAINT FOR DAMAGES

days while he lay in a vegetative state without any comfort, love, or contact from his

family before he died.

98. Due to hospital protocols enacted in response to the Covid-19 pandemic, only one person

was allowed in any patient's room at any given time. Due to the ongoing presence of a

Deputy Sheriff which consumed the single-person capacity, MARIA ARIAS was not

allowed to see her son while he lay in the hospital dying, give him comfort, or say her

final farewell.

99. On information and belief, DEFENDANTS knew of this Covid-19 hospital protocol, and

knew that Mr. Guerra-Arias had been lawfully ordered released from custody on July 10,

2020. On information and belief, DEFENDANTS intentionally caused Mr. Guerra-Arias

to remain in custody in order that they could have a COUNTY agent supervise him and

ensure that, if he awoke from his comatose state, an agent could dissuade him from

making statements about what caused his injuries, prevent him from disclosing to another

person what happened to him in the cell in Metro Courthouse lockup, or witness him

making such statements in order to be situated to cast doubt on them in the future.

100.      PLAINTIFF MARIA ARIAS is informed and believes that DEFENDANTS

engaged in this conduct of preventing her from seeing her son in his final days

knowingly, and with the intent to cause her and Mr. Guerra-Arias extreme emotional

distress, or with reckless disregard for the substantial certainty that they would suffer

extreme emotional distress as a result of DEFENDANTS' conduct.

101.      DEFENDANTS and DOES 1 through 100, inclusive, participated in,

conspired with, approved of and/or aided and abetted the conduct of remaining

DEFENDANTS.

COMPLAINT FOR DAMAGES

102.     As a result of this intentional, extreme, and outrageous conduct, MARIA ARIAS

did suffer extreme emotional distress including but not limited to extreme grief, fear,

terror, frustration, helplessness, confusion, and anxiety.

103.     Plaintiff is informed and believes that DEFENDANTS and DOES 1

through 100, inclusive, acted knowingly and willfully, with reckless disregard for the

substantial risk of severe harm Plaintiff. Therefore, Plaintiff is entitled to an award of

punitive damages against the individual defendants, not any public entity, in order to

punish those defendants and to deter them and others from such conduct in the future.

## EIGHTH CAUSE OF ACTION– FALSE IMPRISONMENT

### By THE ESTATE OF JESUS GUERRA ARIAS

### Against ALL DEFENDANTS:

104.     THE ESTATE OF JESUS GUERRA-ARIAS, by and through his

successor in interest, reincorporates, and realleges as if set forth fully herein, paragraphs

1 through 103, above.

105.     On July 8, 2021, Mr. Guerra-Arias was taken into LAPD custody pursuant to a

criminal investigation.

106.     Mr. Guerra-Arias remained in LAPD custody until no later than July 10, 2021, at

some time between 10:00 a.m. and 12:00 p.m. At or by that time, Mr. Guerra-Arias was

transferred to the custody of DEFENDANT COUNTY. DEFENDANT COUNTY

transported or otherwise caused Mr. Guerra-Arias to be placed in a cell in the lockup area

adjacent to Department 73 at the Metro Courthouse.

107.     The Los Angeles County District Attorney filed charges pursuant to LAPD's

criminal investigation that began on July 8, 2020.

COMPLAINT FOR DAMAGES

108.     On information and belief, Mr. Guerra-Arias' case was called for arraignment at or around 3:00 p.m. on July 10, 2020, in Department 73.

109.     On information and belief, the court in Department 73 ordered that Mr. Guerra-Arias be released forthwith on his own recognizance and ordered that he return for further proceedings on a future date.

110.     Notwithstanding the court's order, DEFENDANT COUNTY did not release Mr. Guerra-Arias from its custody until July 14, 2020, four days after the court's order that he be released. Notably, this date is also two days after his death.

111.     COUNTY documented that Mr. Guerra-Arias was released from its custody on July 14 on his own recognizance.

112.     After the court's order that Mr. Guerra-Arias be released from COUNTY custody, COUNTY's ongoing imprisonment of Mr. Guerra-Arias constituted detention without legal process.

113.     DEFENDANTS' conduct in detaining Mr. Guerra-Arias without legal process was done intentionally, with express knowledge that the court's order eliminated the sole legal basis that DEFENDANTS had for imprisoning Mr. Guerra-Arias.

114.     As a result of DEFENDANTS' intentionally wrongful conduct, Mr. Guerra-Arias was forced to endure detention by law enforcement while he fought for his life at Good Samaritan Hospital, during medical transportation, at LAUSC, and, on information and belief, at Rancho Los Amigos Facility. As described above, Mr. Guerra-Arias endured increased stress, worry, discomfort, and anxiety that accompanies imprisonment while he underwent testing and medical procedures in attempts to save his life. As a result of DEFENDANTS' conduct, he was denied the contact, love, and support of his during his

COMPLAINT FOR DAMAGES

24

final days and hours because a deputy Sheriff being was stationed in his hospital room

consuming the one-person capacity pursuant to hospital Covid-19 protocol.

115.          On information and belief, DEFENDANTS and DOES 1 through 100,

inclusive, acted knowingly and willfully, with reckless disregard for the substantial risk

of severe harm Plaintiff. Therefore, Plaintiff is entitled to an award of punitive damages

against the individual defendants, not any public entity, in order to punish those

defendants and to deter them and others from such conduct in the future.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants, as to all causes of action

as follows:

1.  Plaintiff demands a jury trial as to the issues triable;

2.  General damages and special damages according to proof;

3.  Punitive damages against the individual defendants, and not any public entity;

4.  Attorney's fees pursuant to 42 U.S.C. §1983, and any other appropriate statute;

5.  Injunctive relief, both preliminary and permanent, as allowed by law;

6.  Costs of suit incurred herein; and

7.  Such further relief as the Court deems just and proper.


Dated: July 8, 2021                    Respectfully submitted,


By: *Kellen J. Davis*
JOVAN BLACKNELL
KELLEN DAVIS
Attorneys for Plaintiffs


COMPLAINT FOR DAMAGES

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of majority and not a party to the within action. My business address is 200 Corporate Pointe, Suite 495, Culver City, California 90230.

On July 27, 2021, I served the foregoing document described as: **"PLAINTIFFS MARIA ARIAS AND THE ESTATE OF JESUS GUERRA-ARIAS' COMPLAINT FOR DAMAGES"** on the interested parties in this action by providing a true copy as follows:

Los Angeles County Board of Supervisors
500 W. Temple Street, Room 383
Los Angeles, CA 90012

[ ]           BY ELECTRONIC SERVICE delivered to:

[ ]           I deposited such envelope in the mail at Culver City, California. The envelope was mailed with postage thereon fully prepaid.

[ x ]        BY PERSONAL SERVICE: I caused such envelope to be delivered by hand to the offices of the addressee.

[ x ]        (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ ]           (Federal) I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 27, 2021, in Los Angeles, California.

Samuel Davis